# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Michael McMahon, to Use of Charles Muh, Plff. in Err., v. Mary A. Bardinger et al.

The receipt of money by an attorney at law in part payment of a mortgage binds the holder thereof, if at the time he had authority to collect it.

Whether under the evidence he had such authority is a question for the jury.

(Decided March 8, 1886.)

Error to the Common Pleas of Lycoming County. Affirmed.

The facts sufficiently appear in the charge of the court below, to the jury, which was as follows:

I am very sorry to say to you that the case which you have

---

NOTE.—A payment to an attorney binds the client if he has acted within the scope of his authority (Lehr's Estate, 3 York Legal Record, 80) ; or if his acts have been ratified by the client (Henderson's Appeal, 4 Pennyp. p. 229). The extent of his authority is a question of fact. In the absence of fraud a payment to the attorney of record will bind. McDonald v. Todd, 1 Grant Cas. 17; Bracken v. Pittsburg, 27 Pittsb. L. J. 202. Authority to collect interest upon loan will not give the right to collect the principal (Slaymaker v. Herr, 12 Lanc. L. Rev. 342), though he was employed to do both in other cases, or his acts were ratified (Hines v. Herr, 13 Lanc. L. Rev. 13). But the client is not bound where the evidence showed fraud between the attorney and the defendant (Bracken v. Pittsburg, 27 Pittsb.

been sworn to try arises out of the dishonesty of an officer of this
court, and, if we had the party in our power who has caused this
trouble, we think we could administer satisfaction to everybody;
but we have not.    We have to take the case as we have it here.
It seems there was a mortgage of record in this county in favor
of a man by the name of McMahon against Mary and Adam
Bardinger, dated the 21st day of July, 1882; on the same day
it was assigned to Henry Antes, afterwards it was assigned to
Charles Muh, who is the plaintiff in this case.    Mr. Muh em-
ployed Mr. Webster to bring an action to foreclose this mortgage
which raises the question that you are now to try,—that is, to as-
certain what amount is due from the Bardingers to Muh on
that mortgage.    The plaintiff showed the original mortgage and
the assignments, and, if there had been nothing else in the case,
he would have been entitled to your verdict for the whole
amount, with interest from the time interest should have been
paid up to the present time.    The defendants allege that they
have made a payment of $414 on this mortgage, and are en-
titled to a credit for that amount, and are willing there should
be a judgment against them for the balance.    They claim this
money was paid to A. J. Webster, the attorney who brought this
suit, and that it was paid to him while he was acting as attor-
ney for the plaintiff.    If this is true, then they are entitled to
this credit, and it must be allowed in the calculation, and you
will find a verdict for the plaintiff for the balance.

The plaintiff replies that, while there may have been a pay-
ment of this sum of money, they deny it was paid to them or to
any person authorized to receive it.    If it was paid to Webster
they claim he had no right to receive it.    That brings up the
real question in this case,—whether this money was paid to the
attorney Webster, while he was acting for Muh the plaintiff.
If it was paid while he was acting as the attorney for Muh,
either before suit was brought or afterwards, it must be allowed;
if paid after the suit was brought there is no question, it must
be allowed; if paid before the suit was brought and before Web-

L. J. 202); or where the attorney gave a receipt for a personal debt to
the defendant, who received a receipt as payment of the debt to the client
(Chambers v. Miller, 7 Watts, 63); or where the defendant had been noti-
fied not to pay to the attorney (Weist v. Lee, 3 Yeates, 47); or where the
attorney had been employed in other proceedings, but not to collect (Bry-
ant v. Hamlin, 3 Pa. Dist. R. 385).

ster had any right to collect the money for Muh or any authority to do so, unless the conduct of Muh had misled the defendants so that they were induced to expect from his conduct or declaration that Webster was acting for him, then this would still be good. It will be for you to ascertain, under all the evidence, just what the facts are. That is the one question.

When an attorney brings an action in court, his name is put upon the record at once. It appears there. The action cannot be commenced without the name of the attorney. He signs what is called the "præcipe,"—that is, the paper directing the writ to issue.

In this case you will find that Webster filed the præcipe on the 17th day of October, 1884. Anything done by him in respect to this case after that date cannot be questioned here now. If he received any money after that date, the payment would be good. Now, the defendants show a receipt signed by this same attorney, Webster, dated November 29, 1884. That is one month and twelve days after the suit was commenced. It is for $414. The witness who was on the stand, who paid the money, states his recollection to be that at the time he got this receipt, he paid $150, and that the other part of the money had been paid before that time. On cross-examination his evidence is not so definite as to the times when the sums of money were paid. He also testifies that the attorney who brought the suit had been previously urging payment, and, if not paid, they would have to sell the farm. Muh comes upon the stand and says he did not employ Webster to collect this claim until sometime in November or December. About that he must be mistaken, because the suit was commenced in October. How long before that time Webster had the claim for collection will be for you to determine.

Would an attorney, when he gets claim for collection, bring suit the same day? Would he give notice and try to collect without process of law? How long before that was he endeavoring to collect it? How long before had Muh given it to him? Muh is evidently mistaken as to the time when he gave it to him for collection.

Now, if this whole sum of $414 was paid to Webster at the time when he had the claim for collection, even before the suit was brought, if it was all paid before, or part before and part after, it is a good payment. You can only exclude so much of

the $414 as you find was paid to Webster when he didn't have authority to collect it. It will be your duty, gentlemen, to consider all the evidence, in your endeavor to ascertain what is true in this case.

The plaintiff claims that there is no payment; and, if that is true, he would be entitled to the amount with interest from the time it bears interest. And the debt and interest would amount to $992.48. If that calculation is correct, and there have been no payments, your verdict would be for that amount. If this $414 is to be credited, it will be your duty to make calculation up to the 26th of February, 1885, for at that time the defendants made a tender of the debt, interest, and costs. If the sum due on that date is $542.72, then your verdict would be for the plaintiff for that amount, being the amount due from the defendant to the plaintiff February 28, 1885, with interest on the debt from that date to the date of the verdict. The only effect of the tender is in relation to costs. This tender is admitted to have been made good and the money is now in court in legal form. I have written out a form of verdict if you should find it this way. If the other way, you will ascertain whether or not the calculation is correct. The verdict will be for the plaintiff in either event. It is really a question of fact, for you to determine from all the evidence just what was the truth. It is a well-established principle that where two innocent persons lose money by the default of a third, the party who accredited the third person is the one who must lose the money. The one who gave the authority or semblance of authority is the one that must lose between the two innocent parties. The principle applies generally. When an attorney is of record, that record is public, and everyone is bound to know what it is. When this suit appeared, the presumption of law was that Webster was the attorney of Muh and every payment to him would be good, although there was no written or verbal authority. Webster was an officer of this court, as an attorney, and, if he neglected that duty, there were ample means of punishing him if we could get our hands on him. It is a question of fact for you to determine. These statements will go out with you, and the receipts and the date of the præcipe and the amount of the tender; and I have here the form of the verdict as you may find it the one way or the other.

The jury returned a verdict crediting defendants with the payment and plaintiff brought error.

*J. F. Strieby* for plaintiff in error.

*R. P. Allen* and *John G. Reading, Jr.,* for defendants in error.—In Lynch v. Com. 16 Serg. & R. 369, 16 Am. Dec. 582, this court rules: "In Pennsylvania, the professions of attorney and counselor at law are not distinct. The same person conducts the cause in all its stages, and it has not been considered that his authority ceases when judgment is obtained. A power of attorney is never given or filed unless demanded by the other party, which does not happen in one case of fifty thousand, and then, if procured after demand, it is sufficient. The attorney is in some degree the agent as well as lawyer of the plaintiff." See also *Re* Austin, 5 Rawle, 191, 28 Am. Dec. 657; Stackhouse v. O'Hara, 14 Pa. 89; Taylor v. Gould, 57 Pa. 152; Thomas v. Jarden, 57 Pa. 331.

PER CURIAM:
The controlling question in this case is whether Webster's act in receiving a payment on the mortgage was binding on the holder thereof. The evidence of his action and recognition as attorney was sufficient to submit to the jury, and justifies the finding. The specifications of error are not sustained.

Judgment affirmed.